**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ALPHONSO DAVID, §<br>§<br>§<br>§<br>*Plaintiff,* §<br>§<br>v. §<br>§<br>THE HUMAN RIGHTS CAMPAIGN AND §<br>THE HUMAN RIGHTS CAMPAIGN §<br>FOUNDATION, §<br>§<br>*Defendants.* §<br>§ | Civil Action No. 1:22-CV-00620 |

## DEFENDANTS' ANSWER

Defendants The Human Rights Campaign, Inc. ("**HRC**") and The Human Rights Campaign Foundation ("**HRCF**") ("HRC" and "HRCF" are sometimes collectively referred to as "**HRC**" or the "**Organization**") file this Answer to Plaintiff Alphonso David's ("**Plaintiff**" or "**Mr. David**") Complaint (Dkt. No. 1), and respectfully state as follows:

## INTRODUCTION

1.      HRC denies the allegations in Paragraph 1 of the Complaint, except admits that Plaintiff accepted a position as HRC's President in 2019, that, in doing so, he became the Organization's first Black President, and that the Organization is among America's most prominent organizations advocating for LGBTQ+ rights and equality.  By way of further response:

a.      This case is about a former leader who refuses to take responsibility for the consequences of his own actions that directly contradicted and deeply undermined the core mission of the organization he was entrusted to lead.  Simply put, Mr. David's employment was terminated because he flagrantly violated his employment contract and the trust of HRC, its staff,

stakeholders, and supporters. Two separate, thorough investigations – one by the New York Attorney General and one by HRC with the assistance of an outside law firm – revealed that Mr. David (while employed by HRC) assisted then-New York Governor Andrew Cuomo's efforts to discredit, silence, and/or intimidate women who accused Governor Cuomo of sexual harassment and assault. For HRC, one of the nation's leading civil rights organizations advocating for equality for LGBTQ+ people, a community whose members disproportionately are survivors of sexual harassment and violence, Mr. David's conduct was an unprecedented occurrence. With the leader, and face, of the Organization having been found to have engaged in actions that are patently violative of HRC's mission, Mr. David left HRC no choice but to terminate his employment in accordance with his employment agreement.

b. Rather than take responsibility for his behavior that did not live up to HRC's values and mission, Mr. David further undermines HRC's work by falsely claiming that he was terminated because of his race.

c. HRC's decision to terminate Mr. David's employment was based on legitimate, non-discriminatory reasons having absolutely nothing to do with race. The same diverse team of leaders who in July 2021 voted to award Mr. David a five-year contract extension (at the highest salary ever for an HRC executive) made the unanimous decision to terminate Mr. David's employment in September 2021. During those intervening weeks: (1) HRC learned of detailed revelations into Mr. David's stunning and improper actions documented in the New York Attorney General investigation; (2) Mr. David falsely assured HRC leadership that the Organization had nothing to worry about with regard to his involvement in the Governor Cuomo scandal before HRC had the opportunity to investigate the matter; and (3) HRC completed its

investigation which again confirmed Mr. David's actions as outlined in the New York Attorney General's Cuomo report.

d.     After New York Attorney General Letitia James released her investigative findings about Governor Cuomo and those who assisted Governor Cuomo (the "**Cuomo Report**"), HRC's Boards of Directors launched an internal investigation into the conduct of Mr. David as set forth in the Cuomo Report, which was conducted through the independent Executive Committees of HRC and HRCF acting jointly and with the assistance of outside legal counsel (the "**Investigation**").  Mr. David was interviewed at length during the Investigation, and he admitted to engaging in the specific acts described in the Cuomo Report.  To this day, Mr. David does not dispute that he took such acts.

e.     At the conclusion of the Investigation, HRC's Executive Committees unanimously agreed that Mr. David's conduct violated his employment contract and HRC policies, and was inconsistent with the Organization's values, beliefs, and mission.  Among other things, HRC's Executive Committees found that Mr. David's conduct beginning in December 2020, including as set forth in the Cuomo Report, has resulted in and may be expected to result in material damage to HRC and HRCF's interests, reputation or prospects, and further that Mr. David, through his conduct, has damaged his reputation significantly enough to impair his ability to effectively serve as the public face and voice of HRC and HRCF.

f.     The Executive Committees also found that the evidence supports a finding that Mr. David was involved in helping Governor Cuomo respond to allegations of sexual harassment or other mistreatment of women, in violation of HRC values, policies and missions, and that Mr. David failed to avoid or disclose to HRC the conduct that he engaged in December

2020, which was a conflict of interest between his personal interest and the interests of HRC and inconsistent with the mission of the Organization.

g.    Mr. David claims he was never informed about the reasons for his dismissal, and that HRC's termination process lacked transparency or due process.  That is not correct. Morgan Cox and Jodie Patterson, HRC and HRCF Board Chairs, respectively, explained precisely to Mr. David the reasons supporting termination of his employment contract "for Cause," and offered him a dignified exit through resignation, but Mr. David refused to resign.  Moreover, Mr. David requested, and received, an opportunity to address the full Executive Committees, and at no time during such presentation did Mr. David dispute having engaged in the conduct described in the Cuomo Report.

h.    Significantly, at no time during any of these discussions did Mr. David state that HRC's decision had anything to do with race.  Nor could he.

i.    To be clear, HRC never undertook any adverse employment action against Mr. David based on his race.  His termination was based solely on his own conduct, including his poor judgment, misguided actions, and involvement in the Governor Cuomo scandal, his failure to take any accountability, and the fact that his conduct was counter to HRC's values and mission. Mr. David knows this.  He knows that his conduct, as revealed in the Cuomo Report, is not how accusers and survivors of sexual assault and harassment, many of whom are part of the LGBTQ+ community, should be treated.  HRC notes that in the wake of the Cuomo Report, executives and Board members in other advocacy organizations similarly lost their jobs or resigned from leadership positions, recognizing that their assistance to Governor Cuomo in responding to sexual harassment allegations was divisive, detrimental, and contrary to their organization's mission.

j.     In an effort to distract from his own wrongful conduct, Mr. David challenges HRC's commitment to the values of diversity, equity, inclusion, and belonging. HRC unequivocally denies such claims and Mr. David's allegations. HRC has an unwavering commitment to such values, which are plainly core to its mission. Both prior to and following the self-critical analysis in the 2015 "Pipeline Report," HRC has undertaken deep work to improve its culture and hold itself accountable around anti-racism, diversity, equity, and inclusion, and to ensure that the Organization truly lives HRC's mission and the values it fights for every day. The Organization recognizes that equality cannot be achieved while LGBTQ+ people of color continue to be oppressed on the basis of race. To that end, HRC treats racial equity and inclusion as a cornerstone of its work, both in terms of staff and board diversity, and its advocacy. Among other programming promoting racial equality and inclusion, HRC mobilizes and supports Historically Black Colleges and Universities ("**HBCUs**") in enhancing policies and services that promote excellence in LGBTQ+ inclusion, equity, and engagement, prioritizes diverse storytelling and visibility efforts in its public communications, and funds and conducts research regarding issues faced by Black LGBTQ+ people. HRC has and will continue to work in coalition and allyship with civil rights, racial justice, and social justice organizations.

k.     It is heartbreaking to see a former President of HRC ignore and otherwise attack this work, of which he was a part for two years. It is also unfortunate that Mr. David has falsely and unfairly maligned numerous individuals who have dedicated their lives to the fight for civil rights and equality. Mr. David's meritless lawsuit undermines the critical work that HRC continues to undertake to combat systemic racism and inequities.

2.     HRC denies the allegations in Paragraph 2 of the Complaint, except admits that Plaintiff's employment contract was renewed in 2021 and that the renewed contract raised his base salary by 30%.

3.     HRC denies the allegations in Paragraph 3 of the Complaint, except admits that Plaintiff had worked in New York State government as counsel to Governor Cuomo prior to his position as HRC's President.  HRC also admits the Cuomo Report finding that Governor Cuomo had sexually harassed female staffers and that he and his advisors—which specifically included Plaintiff—engaged in retaliation against the women who accused Governor Cuomo.  HRC further admits that at Plaintiff's urging, the Organization issued a statement of confidence in favor of Plaintiff.  By way of further response, HRC states that it issued such statement after Plaintiff affirmatively (and falsely) assured HRC that the Organization had nothing to worry about with regard to his involvement in the Cuomo scandal, and before HRC had the opportunity to investigate Plaintiff's involvement in the Cuomo scandal.  HRC admits they retained Sidley Austin LLP ("**Sidley**") to assist the Boards in the Investigation into the allegations regarding Plaintiff contained in the Cuomo Report, but HRC denies that this decision was taken at Plaintiff's suggestion.  By way of further response, HRC states that Plaintiff originally indicated that he supported the Investigation, but later lobbied Board and HRC leadership in an effort to convince them that an Investigation was a bad idea.

4.     HRC denies the allegations in Paragraph 4 of the Complaint.  By way of further response, HRC has been transparent in why Mr. David's employment was terminated.  The Investigation corroborated the findings in the Cuomo Report related to Mr. David's conduct, including that Mr. David engaged in a number of activities in December 2020, while HRC President, to assist Governor Cuomo's team in responding to allegations of sexual harassment.

Mr. David's conduct was in violation of his employment contract, HRC's policies, including but not limited to its Conflict of Interest policy, the mission of HRC, and caused material damage to HRC and to Mr. David's reputation significant enough to impair his ability to effectively serve as the public face and voice of HRC.

5.     HRC denies the allegations in Paragraph 5 of the Complaint, except admits that Plaintiff met with the Sidley attorneys and that Plaintiff was given the opportunity to resign prior to the Boards taking an official vote on Plaintiff's termination of employment.

6.     HRC denies the allegations in Paragraph 6 of the Complaint, except admits Plaintiff refused to resign voluntarily when given the opportunity to do so.

7.     HRC denies the allegations in Paragraph 7 of the Complaint.

8.     HRC denies the allegations in Paragraph 8 of the Complaint.

## JURISDICTION AND VENUE

9.     Paragraph 9 of the Complaint contains legal arguments and/or conclusions to which no response is required.  To the extent a response is required, HRC admits Plaintiff purports to assert a claim under 42 U.S.C. § 1981, and acknowledges that Plaintiff has waived his right to arbitrate his purported claims, and HRC does not intend to challenge such waiver.

10.     Paragraph 10 of the Complaint contains legal arguments and/or conclusions to which no response is required.  To the extent a response is required, HRC acknowledges that they do not intend to challenge Plaintiff's assertion that venue is proper in this Court.

## PARTIES

11.     HRC admits the allegations in Paragraph 11 of the Complaint.  By way of further response, HRC states that, by inspiring and engaging individuals and communities, HRC strives to end discrimination against LGBTQ+ people and realize a world that achieves fundamental fairness and equality for all.

12.     HRC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 12 of the Complaint.

## FACTUAL ALLEGATIONS

13.     HRC admits the allegations in Paragraph 13 of the Complaint.

14.     HRC denies the allegations in Paragraph 14 of the Complaint.

15.     HRC denies the allegations in Paragraph 15 of the Complaint, except admits they conducted internal surveys of their employees, the results of which were memorialized in a 2015 report known as the "Pipeline Report," and that the report was, upon information and belief, leaked to the media.

16.     Paragraph 16 of the Complaint purports to characterize the contents of the Pipeline Report, which document speaks for itself, and HRC, thus, denies Plaintiff's characterization of same.  By way of further response, HRC states the "Pipeline Report" was commissioned as part of HRC's continued thoughtful and comprehensive diversity and inclusion efforts with the goals of better representing the communities it serves – and hiring, nurturing, and retaining a workforce that not only looks like America but feels respected and appreciated for the hard work they do every day.

17.     HRC denies the allegations in Paragraph 17 of the Complaint.

18.     HRC denies the allegations in Paragraph 18 of the Complaint.

19.     HRC admits the allegations in Paragraph 19 of the Complaint.

20.     HRC denies the allegations in Paragraph 20 of the Complaint.

21.     HRC denies the allegations in Paragraph 21 of the Complaint, except admits Plaintiff and Chad Griffin each occupied the position of President of HRC.

22.     HRC denies the allegations in Paragraph 22 of the Complaint.

23.     HRC denies the allegations in Paragraph 23 of the Complaint, except admits that several months into Plaintiff's tenure as HRC's President, the COVID-19 pandemic emerged.

24.     HRC denies the allegations in Paragraph 24 of the Complaint, except admits that a white Board member was asked to resign following their making of several comments believed to be inappropriate.

25.     HRC denies the allegations in Paragraph 25 of the Complaint.

26.     HRC denies the allegations in Paragraph 26 of the Complaint.  By way of further response, HRC states that before, during, and after Mr. David's tenure, HRC has taken numerous meaningful actions to support racial justice issues, by, among other things, forming partnerships with leading racial and social justice organizations and taking public stands supporting the movement for racial justice.

27.     HRC denies the allegations in Paragraph 27 of the Complaint.

28.     HRC denies the allegations in Paragraph 28 of the Complaint.

29.     HRC admits the allegations in Paragraph 29 of the Complaint.

30.     HRC denies the allegations in Paragraph 30 of the Complaint.

31.     HRC denies the allegations in Paragraph 31 of the Complaint.

32.     HRC admits the allegations in Paragraph 32 of the Complaint.

33.     HRC lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding what the AG's investigators told Plaintiff or his attorney about Governor Cuomo's investigation or how he came to be interviewed by the AG's investigators. HRC admits that Plaintiff's contract renewal negotiations occurred while Plaintiff's former employer, Governor Cuomo, was under scrutiny and, upon information and belief, under investigation for sexual harassment and other misconduct. HRC denies the remaining allegations in Paragraph 33 of the Complaint. By way of further response, HRC states that during contract renewal negotiations, Plaintiff affirmatively (and falsely) assured HRC that the Organization had nothing to worry about with regard to his involvement in the Cuomo scandal.

34.     HRC denies the allegations in Paragraph 34 of the Complaint, except admits that the Cuomo Report was issued on or about August 3, 2021; the Cuomo Report concluded Governor Cuomo sexually harassed numerous women; the Cuomo Report specifically mentioned Plaintiff, by name, numerous times as someone who actively assisted Governor Cuomo after the allegations against him were made, including but not limited to: (1) Plaintiff provided confidential, personnel-related information concerning one of the accusers (which Plaintiff retained in his files after he left his employment with the New York government), which were leaked to the media; (2) Plaintiff reviewed, edited, commented on, and circulated draft letters in support of Governor Cuomo; and (3) Plaintiff provided advice to Governor Cuomo and his former colleagues regarding how to respond to some of the allegations being made against Governor Cuomo; and upon information and belief, Plaintiff tweeted (or caused to be tweeted by his Twitter account) the statement quoted in Paragraph 34. By way of further response, HRC states that given the specific accusations against Plaintiff in the Cuomo Report, HRC disputes Plaintiff's characterization that he "was not accused of any wrongdoing" in the Cuomo Report, which document speaks for itself.

35. HRC admits that at Plaintiff's urging, the Organization issued a statement in support of Plaintiff after the Cuomo Report was released, as alleged in Paragraph 35 of the Complaint. By way of further response, HRC states that it issued such statement after Plaintiff affirmatively (and falsely) assured HRC that the Organization had nothing to worry about with regard to his involvement in the Cuomo scandal, and before HRC had the opportunity to investigate Plaintiff's involvement in the Cuomo scandal.

36. HRC admits they retained Sidley to assist the Boards in the Investigation into the allegations regarding Plaintiff contained in the Cuomo Report, as alleged in Paragraph 36 of the Complaint, but HRC denies that this decision was taken at Plaintiff's suggestion.

37. HRC admits the allegations in Paragraph 37, and further states that HRC has been transparent in why Mr. David's employment was terminated. The Investigation corroborated the findings in the Cuomo Report that Mr. David engaged in a number of activities in December 2020, while HRC President, to assist Governor Cuomo's team in responding to allegations of sexual harassment. Mr. David's conduct was in violation of his employment contract, HRC's policies, including but not limited to its Conflict of Interest policy, the mission of HRC and caused material damage to HRC and to Mr. David's reputation significant enough to impair his ability to effectively serve as the leader, public face and voice of HRC.

38. HRC denies the allegations in Paragraph 38 of the Complaint, except admits that HRC retained Sidley to assist the Boards in the Investigation and that Plaintiff participated in the Investigation, including an interview that lasted numerous hours.

39. HRC denies the allegations in Paragraph 39 of the Complaint, except admits that HRC and HRCF Board Chairs Morgan Cox and Jodie Patterson called Plaintiff on September 2, 2021, and offered Plaintiff the opportunity to resign voluntarily before the Boards voted formally

on his termination of employment for Cause. By way of further response, Mr. Cox and Ms. Patterson explained precisely to Mr. David the reasons supporting termination of his employment contract "for Cause."

40. HRC denies the allegations in Paragraph 40 of the Complaint.

41. HRC denies the allegations in Paragraph 41 of the Complaint.

42. HRC denies the allegations in Paragraph 42 of the Complaint, except admits that the HRC and HRCF Boards voted to terminate Plaintiff's employment for Cause.

43. HRC denies the allegations in Paragraph 43 of the Complaint.

44. Paragraph 44 of the Complaint purports to characterize the contents of Plaintiff's employment agreements, which speak for themselves, and, thus, HRC denies Plaintiff's characterization of same.

45. HRC denies the allegations in Paragraph 45 of the Complaint, including Plaintiff's characterization of the contents of Plaintiff's employment agreements, which speak for themselves.

46. HRC denies the allegations in Paragraph 46 of the Complaint.

47. HRC denies the allegations in Paragraph 47 of the Complaint.

48. HRC denies the allegations in Paragraph 48 of the Complaint.

49. HRC denies the allegations in Paragraph 49 of the Complaint.

50. HRC denies the allegations in Paragraph 50 of the Complaint.

51. HRC denies the allegations in Paragraph 51 of the Complaint.

## COUNT I

## RACE DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 1981

52.    HRC restates and incorporates by reference each of their foregoing responses as if set forth fully herein.

53.    Paragraph 53 contains legal arguments and/or conclusions to which a response is not required.  To the extent a response is required, HRC respectfully refers the Court to the statutory provision cited therein for its full text and meaning.

54.    HRC denies the allegations in Paragraph 54 of the Complaint.

55.    HRC denies the allegations in Paragraph 55 of the Complaint.

56.    HRC denies the allegations in Paragraph 56 of the Complaint.

## COUNT II

## NEW YORK EQUAL PAY ACT

57.    HRC restates and incorporates by reference each of their foregoing responses as if set forth fully herein.

58.    Paragraph 58 contains legal arguments and/or conclusions to which a response is not required.  To the extent a response is required, HRC respectfully refers the Court to the statutory provision cited therein for its full text and meaning.

59.    HRC denies the allegations in Paragraph 59 of the Complaint.

60.    HRC denies the allegations in Paragraph 60 of the Complaint.

61.    HRC denies the allegations in Paragraph 61 of the Complaint.

## COUNT III

## RACE DISCRIMINATION IN VIOLATION OF NYSHRL

62.     HRC restates and incorporates by reference each of their foregoing responses as if set forth fully herein.

63.     Paragraph 63 contains legal arguments and/or conclusions to which a response is not required.  To the extent a response is required, HRC respectfully refers the Court to the statutory provision cited therein for its full text and meaning.

64.     HRC denies the allegations in Paragraph 64 of the Complaint.

65.     HRC denies the allegations in Paragraph 65 of the Complaint.

## COUNT IV

## RACE DISCRIMINATION IN VIOLATION OF NYCHRL

66.     HRC restates and incorporates by reference each of their foregoing responses as if set forth fully herein.

67.     Paragraph 67 contains legal arguments and/or conclusions to which a response is not required.  To the extent a response is required, HRC respectfully refers the Court to the statutory provision cited therein for its full text and meaning.

68.     HRC denies the allegations in Paragraph 68 of the Complaint.

69.     HRC denies the allegations in Paragraph 69 of the Complaint.

**COUNT V**

**BREACH OF CONTRACT**

70.     HRC restates and incorporates by reference each of their foregoing responses as if set forth fully herein.

71.     HRC admits the allegations in Paragraph 71 of the Complaint.  By way of further response, HRC states that during contract renewal negotiations, Plaintiff affirmatively (and falsely) assured HRC that the Organization had nothing to worry about with regard to his involvement in the Cuomo scandal.

72.     HRC denies the allegations in Paragraph 72 of the Complaint.

73.     Paragraph 73 of the Complaint purports to characterize the contents of the agreements between HRC and Plaintiff, which speak for themselves, and HRC, thus, denies Plaintiff's characterization of same.

74.     HRC denies the allegations in Paragraph 74 of the Complaint, except admits that HRC terminated Plaintiff's employment for Cause.

75.     HRC denies the allegations in Paragraph 75 of the Complaint, except for any legal arguments and/or conclusions to which no response is required.

76.     HRC denies the allegations in Paragraph 76 of the Complaint.

77.     Except as specifically admitted above, HRC denies each and every fact, matter or allegation contained in the Complaint.

**PRAYER FOR RELIEF**

Defendants deny Plaintiff is entitled to any of the relief set forth in the Prayer for Relief paragraph of his Complaint.

## DEMAND FOR A JURY TRIAL

Defendants acknowledge Plaintiff's jury demand.

## AFFIRMATIVE DEFENSES

Defendants hereby expressly reserve the right to amend this Answer or add additional defenses or other matters, as allowed by the Federal Rules of Civil Procedure and as discovery proceeds.

By pleading the following defenses, Defendants do not concede that they possess or assume the burden to prove each or any of them. Defendants maintain that Plaintiff retains the burden of proof on all matters necessary to state and maintain the claims asserted in his Complaint.

Without admitting liability as to any of Plaintiff's purported claims, Defendants assert the following affirmative defenses and other matters:

### FIRST DEFENSE

The Complaint fails, in whole or in part, to state a claim upon which relief may be granted.

### SECOND DEFENSE

Plaintiff's purported claims are barred, in whole or in part, because any employment actions taken by HRC with respect to Plaintiff's employment were based solely on legitimate, non-discriminatory reasons, and were in no way based on Plaintiff's race or any other protected characteristic.

### THIRD DEFENSE

Plaintiff's claims under the New York City Human Rights Law (the "**NYCHRL**") must be dismissed for lack of subject matter jurisdiction inasmuch as the location of the impact of the alleged discriminatory conduct was outside of New York City.

## FOURTH DEFENSE

Plaintiff's purported claims are barred, in whole or in part, because he fails to state a *prima facie* claim under 42 U.S.C. § 1981, the New York State Human Rights Law (the "**NYSHRL**"), and/or the NYCHRL.

## FIFTH DEFENSE

Plaintiff's purported claims are barred, in whole or in part, because of the doctrines of unclean hands and/or *in pari delecto*.

## SIXTH DEFENSE

Plaintiff's purported claims are barred, in whole or in part, because Plaintiff has not suffered any injury or damages.

## SEVENTH DEFENSE

To the extent that Plaintiff suffered any damages, which damages are denied, any such damages are barred and/or must be reduced on account of Plaintiff's failure to take reasonable steps to mitigate damages.

## EIGHTH DEFENSE

Plaintiff's purported claims are barred, in whole or in part, because, at all times relevant, HRC maintained policies expressly prohibiting all discrimination, harassment, and retaliation in the workplace. To the extent Plaintiff experienced or believes he experienced discrimination of any kind, his claims are barred, in whole or in part, due to his failure to avail himself of the preventative and remedial measures made available by HRC.

## NINTH DEFENSE

Plaintiff's purported claims are barred, in whole or in part, by the after-acquired evidence doctrine.

## TENTH DEFENSE

Plaintiff's purported claims are barred, in whole or in part, because the purported damages complained of, which damages are denied, were not caused by HRC's conduct or actions. To the extent Plaintiff suffered any damages, which damages are denied, any such damages are the result of Plaintiff's own conduct and actions.

## ELEVENTH DEFENSE

Plaintiff's purported claims for punitive damages are barred, in whole or in part, because Plaintiff failed to plead facts necessary to sustain a claim for punitive damages, and, moreover, HRC did not act willfully, outrageously, or with malice or reckless disregard toward Plaintiff.

## TWELFTH DEFENSE

Plaintiff cannot recover punitive damages for any alleged unlawful discriminatory or retaliatory conduct because, at all times relevant to the Complaint, HRC engaged in good-faith efforts to comply with their obligations under all applicable laws relating to discrimination and retaliation in employment, and acted in good faith and not in reckless disregard of Plaintiff's rights.

## THIRTEENTH DEFENSE

Upon information and belief, at least some of Plaintiff's claims are interposed for an improper purpose and in bad faith to vexatiously harass HRC.

## FOURTEENTH DEFENSE

Plaintiff's claim under the New York Equal Pay Act is barred, in whole or in part, because Plaintiff's employment agreement amendment provided Plaintiff greater compensation than his

predecessor, Plaintiff's compensation pursuant to his original employment agreement resulted in greater total compensation than that paid to his predecessor in his original contract, and in any event, differences, if any, in the compensation structure or agreements between HRC and Plaintiff and his predecessor were justified by factors having nothing to do with race.

## FIFTEENTH DEFENSE

Plaintiff's claim for breach of his employment agreement amendment is barred, in whole or in part, because the agreement was the product of improper inducement and/or misrepresentation. Among other things, during contract renewal negotiations, Plaintiff affirmatively (and falsely) assured HRC that the Organization had nothing to worry about with regard to his involvement in the Cuomo scandal.

## RESERVATION OF RIGHTS

Defendants assert the foregoing Affirmative Defenses without the benefit of discovery from Plaintiff. Defendants therefore reserve the right to supplement their Affirmative Defenses to the extent any additional defenses become available or apparent during the course of discovery. Defendants hereby reserve the right to amend their Answer and reserve all affirmative and other defenses, at law or in equity, which become applicable after the substantial completion of discovery or otherwise in the course of litigation.

## <u>CONCLUSION</u>

For these reasons, Defendants respectfully request the Court:

(a) Dismiss Plaintiff's Complaint in its entirety with prejudice;

(b) Deny each and every demand and prayer for relief contained in Plaintiff's Complaint;

(c) Grant relief in favor of Defendants with respect to each of Plaintiff's purported claims;

(d) Order Plaintiff to pay Defendants the costs of this action and the reasonable attorneys' fees incurred in defending against Plaintiff's purported claims; and

(e) Grant to Defendants such other and further relief as the Court may deem just and proper.

*[signature page follows]*

Dated: March 7, 2022

Respectfully submitted,

**DLA PIPER LLP (US)**

/s/ *Brian S. Kaplan*

Kim J. Askew, Esq.
(*pro hac vice application pending*)
Kim.Askew@us.dlapiper.com
Maria A. Garrett, Esq.
(*pro hac vice application pending*)
Maria.Garrett@us.dlapiper.com
1900 North Pearl Street, Suite 2200
Dallas, Texas 75201
Telephone: (214) 743-4500
Facsimile: (214) 743-4545

Brian S. Kaplan, Esq.
Brian.Kaplan@us.dlapiper.com
Evan D. Parness, Esq.
Evan.Parness@us.dlapiper.com
Cherelle I. Glimp, Esq.
Cherelle.Glimp@us.dlapiper.com
1251 Avenue of the Americas
New York, New York 10020
Phone: (212) 335-4500
Fax: (212) 335-4501

*Attorneys for Defendants*
*The Human Rights Campaign, Inc. and*
*The Human Rights Campaign Foundation*

## <u>CERTIFICATE OF SERVICE</u>

This certifies that, on March 7, 2022, the undersigned filed the foregoing electronically. Notice of this filing will be sent by e-mail to all counsel of record by operation of the Court's electronic filing system.

/s/ *Brian S. Kaplan*
Brian S. Kaplan, Esq.